## Bloomington & Normal Railway, Electric & Heating Company v. George Koss.

1. MOTORMAN—*duty of, in operating car.* It is the duty of a motorman to operate his car only with such care as to enable him to cope with perils which may reasonably be expected to occur. He is not required to run his car with such caution as to guard against the unusual or extraordinary.

2. ORDINARY CARE—*when instruction upon, proper.* An instruction upon this subject is proper which tells the jury that if they believe from the evidence that ordinary care by the plaintiff required him before driving upon a street car track to look and ascertain whether a car was approaching, and that if he had so looked he could, by the exercise of ordinary care, have ascertained whether a car was approaching, and that if he did not look and ascertain and was injured in consequence, then they must find the defendant not guilty.

Action on the case for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed November 24, 1905.

BARRY & MORRISSEY and DE MANGE & HOBLIT, for appellant.

LIVINGSTON & BACH, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by appellee to recover damages for injuries claimed to have been sustained by him through the negligence of appellant. The jury returned a verdict for the plaintiff and assessed his damages at $350. A motion by the defendant for a new trial was overruled and judgment entered upon the verdict. The first count of the declaration avers that plaintiff was driving a team attached to a coal wagon and that defendant operated a street car so negligently that it ran into said wagon, throwing plaintiff therefrom to and upon the street or ground, whereby he was permanently injured. The second count avers that the defendant negligently embanked the snow swept from the car tracks to the side thereof, thus impeding the travel of plaintiff, and that while plaintiff was traveling upon and across said track, by reason of such embankment of snow, the defendant's car ran into plaintiff's wagon, etc. The third count avers that the maintenance of such embankment of snow was in violation of the ordinances of the city of Bloomington. The evidence is insufficient to warrant the jury in finding that the embankment of snow contributed to the accident by which appellee was injured, and he must recover, if at all, because of the alleged careless and improper operation of the street car.

The following facts are disclosed by the evidence: The car which collided with appellee's wagon, on the day of the accident, left Wood street in the city of Bloomington, which street ran east and west and was the terminus of the line, and proceeded north on Allin street, upon a down grade, stopping at the first street crossing to take on passengers. The motorman of the car testified that he then noticed appellee two blocks to the north driving with one horse upon the track; that he had the car under perfect control; that the power was turned on and the brake set and the car was running slowly; that he rang the gong,

but that appellee continued to drive along the track until he passed Jackson street, the fourth street north of Wood street; that after the car had passed Jackson street and was about eighty feet north thereof, appellee turned his horses off the track to the east; that witness believing that appellee had heard the gong and intended to allow the car to pass him, released the brake and increased the speed of the car; that immediately thereafter and when the car was within ten to fifteen feet of the rear end of his wagon, appellee turned his horses sharply to the left and across the track in a northwesterly direction; that witness immediately put on the brake and reverse power, but that he was unable to stop the car, which struck the rear end of appellee's wagon and pushed it around so that it set east and west, causing appellee to fall out of the south side of the wagon between it and the car and that the car ran two or three feet after it struck the wagon. He further testified that the speed of the car south of Jackson street, when the car was within thirty feet of the wagon, did not exceed seven or eight miles an hour; that after crossing Jackson street the car began to get closer to the wagon; that witness could then have stopped the car in ten or twelve feet; that when appellee turned across the track the car was within ten or fifteen feet of the wagon, and he could have stopped it in fifteen or sixteen feet, and that at the moment the car struck the wagon it could have been stopped in three feet. The evidence further shows that the electric apparatus of the car and the brakes and gong were in good condition.

The evidence as to the speed of the car and whether the gong was rung is in conflict. Two witnesses, would-be passengers, testified that the car was going so fast that they were unable to overtake it by running. Several passengers and by-standers testified that they did not hear the gong sound. If such testimony is taken as true, as it must be, and all opposing testimony ignored, it fairly tends to prove negligence in the operation of the car, and the court would not have been warranted in directing a verdict for

the defendant. The action of the court in refusing at the close of plaintiff's testimony and again at the close of all the evidence, to instruct the jury to return a verdict for the defendant, was therefore proper.

It is further insisted that the court erred in refusing to give to the jury instructions offered by appellant numbered 2, 3, 4, 7, 8, 9 and 10. The principles announced in numbers 2 and 3 were, we think, fully covered by the third instruction given for appellant. That numbered 4 was properly refused as unwarranted by the evidence. Instruction No. 7 is to the effect that if the jury believed from the evidence that the car men were exercising ordinary care, and appellee suddenly and without notice to the car men drove his wagon across the track in a position of danger, then, in order to charge defendant with the duty to avoid a collision, appellee must show that the motorman had an opportunity to grasp the situation and to act so as to avoid the collision, and that if appellee failed to show that the motorman had such an opportunity or if the jury believed from the evidence that the motorman did not have such an opportunity, then they should find the defendant not guilty; that if, on the other hand, the jury believed from the evidence, appellee unexpectedly drove his wagon in front of the car and that the motorman did all he could to avoid the collision, then the jury should find the defendant not guilty. The refusal of an instruction substantially similar to this was assigned as error in Chicago Union Traction Co. v. Browdy, 206 Ill. 617. In discussing the question the court said: "The theory of appellant was that the appellee, without notice to the motorman, suddenly drove upon the track directly in front of an approaching car, and that the motorman did not have time after appellee drove upon the track, to stop the car before it came in contact with the wagon, and it is contended that the instruction properly stated the law applicable to such state of facts, and that it was error for the court to refuse to give such instruction to the jury. The law seems to be well settled that where the alleged negligence of a servant consists of an omission of duty suddenly

and unexpectedly arising, it is incumbent on the plaintiff to show that the circumstances were such that the servant of defendant had an opportunity to become conscious of the fact, giving rise to the duty, and a reasonable opportunity to perform it, before the master can be held liable. The evidence of appellant tended to show that the horse and wagon of appellee were left standing upon the street in such position that the car could safely pass and that it remained until the car was so near that it was impossible for the motorman to stop before it would come in contact with the wagon if it was driven upon the track, when the appellee, without warning, turned upon the track. It is clear that negligence cannot be imputed to the motorman because he did not stop the car while the horse and wagon were standing near the curb and out of the line of contact with the car. The peril to appellee did not commence and become apparent until he turned upon the track. To hold that it was the motorman's duty to stop the car, because the horse and wagon were standing near the track, although sufficiently distant to permit the car to pass in safety, would be to impose upon appellant a duty not imposed upon it by law. Neither was the motorman required to assume that, when his car was too near the horse and wagon to permit him to stop the car before striking the wagon, appellee would suddenly and without notice drive upon the track. He was only required to operate his car with reference to perils which reasonably might be expected to occur. To require him to run his car with such caution as to guard against unusual or extraordinary perils, would be to require him to so operate his car as to prevent the practical operation of the road. The instruction correctly stated a principle of law which was applicable to the case, the principle contained therein was not given to the jury in any other form, and the instruction should have been given."

We think the foregoing language applicable under the facts here, to the instruction under consideration. In the case at bar it is clear that negligence cannot be imputed to

the motorman, because he released his brake when appellee turned his horse to the east, with the apparent intention of allowing the car to pass. The peril did not commence and become apparent until he suddenly pulled his horses to the left, directly in front of the car; then and not till then was the motorman required to act. While the rule of law contained in it was presented to the jury in general terms by the third instruction given for appellant, we are of opinion that that refused more directly and specifically presented the rule invoked by appellant, and that it was entitled to the benefit of the same. We are satisfied, however, that appellant was not so prejudiced thereby as to warrant a reversal of the judgment solely because of its refusal.

The purport of refused instruction No. 9 was that if the jury believed from the evidence that ordinary care by appellee required him before driving upon the track under all circumstances and surroundings to look and ascertain whether the car was approaching, and not drive upon the track without looking; that if he had looked, he could by the exercise of ordinary care have ascertained whether the car was approaching, and that if he did not look and ascertain and was injured in consequence of his failure so to do, then they must find the defendant not guilty. This instruction is an exact copy of one that was tendered by appellant in Chicago City Ry. v. O'Donnell, 208 Ill. 267, where its refusal was assigned as error. The court there said: "Appellee says this instruction was properly refused, because it assumed that if plaintiff's intestate saw the car approaching, he should in no event have driven upon the track; that it emphazised the question of his looking or failing to look and that it was covered by other general instructions requiring him to exercise ordinary care to avoid injury. We do not think any suggestion made justified its refusal. It assumed no fact, but submits the question as one of fact to be determined from the evidence whether plaintiff's intestate in the exercise of ordinary care should have looked for the car before turning out and whether he

did look, and then states that if he should have looked and did not look, and was injured in consequence of his failure to do so, the jury should find appellant not guilty. There was no other instruction that contained the proposition here presented except instructions of general character; the matter there presented was the chief ground of defense and should have been submitted by the instruction offered."

In the present case the matter contained in the instruction under consideration  constituted one of the chief grounds of defense, and was not embodied in any other instructions given.   In view of the closeness of the evidence upon the question of appellant's alleged negligence, its refusal was prejudicial error.

It was not error to refuse instruction No. 10 for the reason that the degree of care due from the parties respectively was fully and fairly announced in the given instructions.

As the cause must be remanded, we will refrain from expressing an opinion as to whether or not the verdict was manifestly contrary to the evidence.   The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*   ᵒ